IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BEATRICE FLEMING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 5302 |
| | ) | |
| CHICAGO TRANSIT AUTHORITY and | ) | |
| ANTONIO MCFADDEN,[1] | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Beatrice Fleming brings the present four-count Fourth Amended Complaint against her present employer Defendant Chicago Transit Authority ("CTA") alleging gender and race discrimination and retaliation in violation of 42 U.S.C. § 1981 (Count I), 42 U.S.C. § 1983 (Count II), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count IV). Fleming also brings a retaliatory discharge claim based on Illinois law pursuant to the Court's supplemental jurisdiction (Count III). *See* 28 U.S.C. § 1367. Before the Court is the CTA's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants the CTA's summary judgment motion and dismisses Counts I, II, and IV from this lawsuit. Because the Court dismisses Plaintiff Fleming's claims over which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Fleming's state law claim of retaliatory discharge. *See* 28 U.S.C. § 1367(c)(3).

---

[1] On May 14, 2007, the Court granted Fleming's Motion for Leave to Voluntarily Dismiss Defendant Antonio McFadden pursuant to Fed. R. Civ. P. 41(a)(2) without prejudice. (R. 136-1.)

**I.     Northern District of Illinois Local Rule 56.1 Statements**

When determining summary judgment motions, the Court derives the background facts from the parties' Local Rule 56.1 statements.  Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence."  *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000).  Specifically, Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue."  *Ammons v. Aramark Uniform Servs., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004).  Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial.  *See Schrott v. Bristol-Myers Squibb Co.,* 403 F.3d 940, 944 (7th Cir. 2005).  The parties' statements must contain short numbered paragraphs including references to the affidavits, parts of the record, and other supporting materials.  *See id.; Ammons,* 368 F.3d at 817.

A litigant's failure to respond to a Local Rule 56.1 statement results in the Court admitting the uncontroverted statement as true.  *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).  The requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted."  *Bordelon,* 233 F.3d at 528.  Moreover, the Court is not required to "wade through improper denials and legal argument in search of a genuinely disputed fact."  *Id.* at 529.  Finally, the Court may disregard statements and responses that do not cite to the record.  *See Cichon v. Exelon*

*Generation Co., L.L.C.* 401 F.3d 803, 809-10 (7th Cir. 2005); *Brasic v. Heinemann's Inc.*, 121

F.3d 281, 284 (7th Cir. 1997). With these principles in mind, the Court turns to the relevant

facts of this case.

## II.     Relevant Facts

### A.     Introduction

On August 12, 2004, Fleming filed her original pro se Complaint in this matter. With

appointed counsel, she filed her First Amended Complaint and the CTA moved to dismiss

certain claims as untimely. In ruling on the CTA's motion to dismiss, the Court dismissed

Fleming's Title VII claims that were based on conduct occurring before January 2004 because

Fleming failed to file her original Complaint within 90 days of receiving her right-to-sue letters

from the EEOC. *See* 42 U.S.C. § 2000e-5(e). Fleming's present claim pursuant to 42 U.S.C. §

1981, however, is timely. On August 9, 2005, Fleming filed an EEOC Charge alleging

retaliation by the CTA for filing prior EEOC Charges and this federal lawsuit in the form of

harassment, write ups, and a suspension without pay, beginning on March 8, 2005. (R. 114-1,

Def.'s Rule 56.1 Stmt. Facts, ¶ 6.) Subsequently, Fleming requested and received a right-to-sue

letter dated April 13, 2006. (*Id*.) On April 24, 2006, Fleming filed the present Fourth Amended

Complaint. (*Id*.)

In Count I of her Fourth Amended Complaint, Fleming brings a Section 1981 claim

alleging that "the CTA had a custom and policy of treating African-Americans differently than

their white counterparts." (R. 75-1, Fourth Amend. Compl. ¶ 60, *see also id.* at ¶¶ 56-65.) In

Count II, Fleming alleges a race and gender discrimination claim against former Defendant

Antonio McFadden in his individual and official capacities relying on 42 U.S.C. § 1983. (*Id.* ¶¶

66-72). In Count III, Fleming sets forth a common law claim of retaliatory discharge under Illinois law. (*Id.* ¶¶ 73-79.) In Count IV, Fleming alleges a Title VII retaliation claim for conduct occurring after March 8, 2005. (*Id.* ¶¶ 80-92.)

### B. Parties

Fleming is a female African-American who began her employment with the CTA as a part-time bus operator on October 26, 1998, and became a full-time bus operator on July 16, 2000. (Defs.' Stmt. Facts ¶ 8; R. 129-1, Pl.'s Rule 56.1 Stmt. Facts, ¶ 1.) Antonio McFadden is an African-American male who supervised Fleming at the CTA Chicago Avenue Garage from June 2002 to October 2003. (Defs.' Stmt. Facts ¶ 9.) Robert Bravi, a male Caucasian, is a retired CTA employee who held the position of General Manager from 1997 to January 2006, and was assigned to the Chicago Avenue Garage from late 2001 until his retirement on January 1, 2006. (*Id.* ¶ 11.) As a General Manager, Bravi had the responsibility for managing all personnel assigned to the garage, including the bus operators. (*Id.* ¶¶ 12, 13.) James Robinson is a retired CTA employee whose last position with the CTA was as a Transportation Manager II assigned to the Chicago Avenue Garage from 2001 to December 2005. (*Id.* ¶ 16.)

### C. Fleming's Discharge

On March 24, 2003, Robinson sent a memorandum to Bravi recommending that Bravi discharge Fleming for excessive absenteeism and tardiness that had occurred within a twelve-month period. (*Id.* ¶ 14.) In April 2003, Bravi met with Fleming and an union representative to discuss Fleming's absenteeism and tardiness. (*Id.* ¶ 52.) Fleming explained that her absences were often the result of her problems commuting to work. (*Id.*) At that time, Bravi decided not to discharge Fleming. (*Id.*) Instead, Bravi placed Fleming on probation from April 11, 2003

until August 27, 2003, based, in part, on the union's recommendation.  (*Id.* ¶ 53.)

After her probationary period ended, Fleming incurred additional misses and several procedural violations, and on October 14, 2003, Robinson held a hearing with Fleming and an union representative.  (*Id.* ¶¶ 59-60.)  Shortly thereafter, Robinson prepared another memorandum to Bravi recommending that Fleming be discharged.  (*Id.* ¶ 61.)  On October 28, 2003, Bravi held a hearing on Robinson's recommendation to discharge Fleming after which he decided to terminate Fleming's employment with the CTA.  (*Id.* ¶ 63; Pl.'s Stmt. Facts ¶ 12.)

Thereafter, Fleming filed a grievance that went to arbitration on November 3, 2004. (Def.'s Stmt. Facts ¶ 64).  The arbitrator ordered Fleming reinstated to her position as a bus operator because her "discharge was predicated on grounds which were unreasonable, arbitrary and capricious."  (*Id.*; Pl.'s Stmt. Facts ¶ 24, CTA 000-1884.)  In March 2005, Fleming was reinstated to her position as a bus operator and was reassigned to the Chicago Avenue Garage. (Def.'s Stmt. Facts ¶ 65; Pl.'s Stmt. Facts ¶ 25.)

### D.      Events After Fleming's Reinstatement

Although Fleming contends that her quality of work met the CTA's minimum standards after she returned to work, Fleming's supervisors issued her seven procedural violations from March 2005 to January 2006.  (Def.'s Stmt. Facts ¶ 65; Pl.'s Stmt. Facts ¶ 26.)  On January 19, 2006, a transportation manager conducted an interview with Fleming and an union representative concerning Fleming's procedural violations after which the transportation manager referred Fleming to the CTA Medical Department for a behavioral evaluation.  (Defs.' Stmt. Facts ¶¶ 68, 69.)  On January 30, 2006, Fleming was ordered to submit to a fitness for duty evaluation after which Fleming was placed on medical leave pending therapy and further evaluation.  (*Id.* ¶ 70.)

In March 2006, a counselor evaluated Fleming and concluded that she was fit to return to work. (*Id.* ¶ 72.) Fleming returned to work on March 15, 2006. (*Id.*)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 127 S.Ct. at 1776.

## ANALYSIS

I.    **The CTA's Liability under Section 1981 – Count I**

In Count I of her Fourth Amended Complaint, Fleming alleges claims of race

discrimination and retaliation against the CTA under Section 1981. Fleming argues that the CTA has "discriminated against her based on her race in the terms and conditions of her employment through treatment at the workplace" and "retaliated against her for complaining of such discrimination." (R. 137-1, Pl.'s Resp. Mot. Summ. J., at 9.) Section 1981(a) reads in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

42 U.S.C. § 1981(a). Section 1981 provides a broad-based prohibition against racial discrimination in the making and enforcing of contracts, including employment contracts. *See Humphries v. CBOCS West, Inc.* 474 F.3d 387, 397 (7th Cir. 2007).

## A.   Monell Standard

Because a municipal entity cannot be held liable for its employee's actions under the theory of respondeat superior under Section 1981, Fleming must establish the CTA's liability by showing that it has a custom or policy that violated her right to make and enforce contracts as protected by Section 1981. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 736-37, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Smith v. Chicago Sch. Reform Bd. of Tr.,* 165 F.3d 1142, 1148 (7th Cir. 1999) ("recovery against a governmental body under § 1981 may not be based on respondeat superior"). Under these circumstances, the Supreme Court has held that courts should apply the principles of Section 1983 litigation as set forth in *Monell v. New York Dep't of Social Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), to lawsuits under Section 1981. *See Jett,* 491 U.S. at 736-37. In other words, a plaintiff must "show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the

7

meaning of *Monell* and subsequent cases." *Looper Maint. Serv. Inc. v. City of Indianapolis,* 197

F.3d 908, 913 (7th Cir. 1999); *see also Alexander v. City of Milwaukee*, 474 F.3d 437, 448 (7th

Cir. 2007) ("Section 1981, like § 1983, also requires a plaintiff to demonstrate an official policy

or custom in order to allow for municipal liability.").  To establish the CTA's liability under the

*Monell* framework, Fleming must present evidence of (1) an express policy that, when enforced,

causes a constitutional deprivation, (2) a widespread practice that, although not authorized by

written law or express municipal policy, is so permanent and well settled as to constitute a

custom or usage with the force of law, or (3) a person with final policymaking authority caused

or ratified the unlawful injury.  *Phelan v. Cook County,* 463 F.3d 773, 789 (7th Cir. 2006)

(citation and quotations omitted); *Simmons v. Chicago Bd. of Educ*., 289 F.3d 488, 494 (7th Cir.

2002) ("One way or another, the policy must be shown to be that of the municipality itself.").

Here, Fleming contends that the CTA has "a widespread practice of non-response to

complaints of racial discrimination and harassment that is so permanent and well settled as to

constitute a custom or usage within the force of law."  (Pl.'s Resp. Brief, at 17.)  Because

Fleming bears the burden of proving this alleged widespread practice at trial, she must set forth

specific facts showing that there is a genuine issue of material fact regarding the existence of this

widespread policy or practice.  *See Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003)

(citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Thus, Fleming must present evidence of a pattern of conduct that gives rise to the inference that

an unlawful custom or practice exists.  *See Calhoun v. Ramsey,* 408 F.3d 375, 380 (7th Cir.

2005).  More specifically, Fleming must set forth evidence of a "series of bad acts [ ] inviting the

court to infer from them that the policymaking level of government was bound to have noticed

what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate [employees]." *Woodward v. Correctional Med. Serv.*, 368 F.3d 917, 927 (7th Cir. 2004) (citation omitted).

**B.     Monell Analysis**

The Court thus turns to Fleming's factual basis supporting her allegations that the CTA has a widespread practice of not responding to its employees' complaints of racial discrimination. Fleming argues that she has "a plethora of evidence of complaints she made of numerous incidents of discrimination that went unanswered." (Pl.'s Resp. Brief, at 19.) Fleming maintains that because the CTA did not respond to these complaints, she had no choice but to pursue formal complaints, which include 25-30 internal grievances with the union and approximately 50 complaints with the EEOC. Fleming argues that based on her numerous unanswered complaints, the CTA essentially "black balled" her, ignored her, and retaliated against her by terminating her employment in October 2003.

The prototypical widespread practice argument focuses on the application of the alleged unconstitutional policy to different individuals – not just actions directed at one person. *See Phelan,* 463 F.3d at 789. Nevertheless, in *Phelan*, the Seventh Circuit considered a plaintiff's claim of a widespread policy or practice of sexual harassment in which the plaintiff only presented evidence of conduct directed at her. *See id.* In doing so, the Seventh Circuit explained that the word "policy" usually means a course of action that is consciously chosen from various alternatives. *Id.* at 790; *see also City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion). The *Phelan* court further instructed that "[i]t is not enough to demonstrate that policymakers could, or even should, have been aware of the

unlawful activity because it occurred more than once. The plaintiff must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Phelan,* 463 F.3d at 790.

Viewing the facts in Fleming's favor – as the Court is required to do at this procedural posture – Fleming has failed to set forth evidence creating a genuine issue of material fact that the CTA had a widespread practice or policy of not responding to claims of racial discrimination that was so pervasive that CTA policymakers adopted this policy by their failure to act or respond. *See Phelan,* 463 F.3d at 790; *Woodward*, 368 F.3d at 927. Fleming's factual assertions that she filed 25-30 union grievances and 50 EEOC complaints are not supported by the record. Instead, the record reflects that she complained to her supervisors and the union on "numerous" occasions. (*See* Pl.'s Stmt. Facts ¶ 5.) Moreover, the record reveals that Fleming filed an EEOC Charge of Discrimination in January 2003 (Charge Number 210-2003-01708) and sometime after October 2003 (Charge Number 210-2004-01056), and that she filled out two EEOC charge questionnaires in September and October 2003. (*Id.*) More importantly, although Fleming presented some evidence that she complained of race discrimination to which her supervisors did not respond, she has failed to weave these separate incidents together into a cognizable widespread policy – a policy that was consciously chosen from various alternatives. *See Phelan,* 463 F.3d at 790. Therefore, Fleming has not set forth evidence creating a genuine issue of material fact that the CTA had a widespread practice or policy as required to establish the CTA's liability under Section 1981.

## II.     Race Discrimination & Retaliation Claims under Section 1981 – Count I

Assuming, *arguendo*, that Fleming has met her burden of establishing a municipal

liability under *Monell*, her Section 1981 claims of race discrimination and retaliation fail on the merits. *See Juniel v. Park Forest-Chicago Heights, Sch. Dist. #163,* 176 F.Supp.2d 842, 849-50 (N.D. Ill. 2001).

### A.      Race Discrimination Claim

Under Section 1981, Fleming may prove intentional discrimination by either the direct or indirect method of proof as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).[2] *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). Under the direct method, Fleming must establish that the motivation behind the termination of her employment in October 2003 was due to her race. *See id.* "A plaintiff may prove discrimination using the direct method by establishing either an acknowledgment of discriminatory intent or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Kampmier v. Emeritus Corp.,* 472 F.3d 930, 937 (7th Cir. 2007). Fleming has not presented any such evidence in support of her race discrimination claim.[3]

Because Fleming has not presented direct evidence of race discrimination, the Court reviews her claim under the *McDonnell-Douglas* indirect method of proof. Under this method, Fleming must establish a prima facie case of intentional discrimination by showing that:  (1) she

_____

[2] The same prima facie standards apply to both Title VII and Section 1981 claims. *See Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 403 (7th Cir. 2007); *Johnson v. City of Fort Wayne, Ind.,* 91 F.3d 922, 940 (7th Cir. 1996) ("Although section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical.").

[3] Fleming asserts that she has direct evidence of race discrimination, but makes her argument in the context of the legal standard for a retaliation claim. *See Stone v. City of Indianapolis Pub. Util. Div.,* 281 F.3d 640, 644 (7th Cir. 2002). The Court addresses Fleming's evidence in support of her retaliation claim in detail below.

is a member of a protected class; (2) she reasonably performed to the CTA's legitimate job expectations; (3) the CTA took a materially adverse employment action against her; and (4) the CTA treated her differently than similarly situated employees outside of her protected class. *See McDonnell Douglas*, 411 U.S. at 802; *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006).

Here, Fleming's race discrimination claim fails because she has not presented any evidence to fulfill the fourth prima facie element, namely, that the CTA treated similarly situated non-African-Americans better than the CTA treated Plaintiff. To determine whether employees are similarly situated, the Court's inquiry is a flexible one that considers "all relevant factors, the number of which depends on the context of the case." *Humphries,* 474 F.3d at 405 (quoting *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 617 (7th Cir. 2000)). "This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue,* 219 F.3d at 617-18. In short, for Fleming to show that a fellow CTA employee is similarly situated to her, she must set forth some evidence that the employee is "directly comparable to her in all material respects." *Burks,* 464 F.3d at 751 (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)).

Although Fleming admits that she does not know the names of similarly situated non-African-American colleagues, she argues that she was held to a higher standard than her colleagues. Fleming's vague assertions, however, do not create a genuine issue of material fact for trial. *See Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist., #163,* 315 F.3d 817,

822 (7th Cir. 2003) ("to withstand summary judgment, the non-movant must allege *specific* facts creating a genuine issue for trial and may not rely on vague, conclusory allegations") (emphasis in original). More importantly, Fleming has not presented any evidence that at least one other CTA bus operator had the same supervisor, was subject to the same standards, and engaged in similar conduct – yet the CTA did not terminate that bus operator's employment. *See Radue,* 219 F.3d at 617-18.

Fleming also argues that statistical evidence supports the fourth prima facie element that similarly situated employees outside of her protected class received systematically better treatment than she. Fleming, however, has not alleged or argued a disparate impact claim in which such statistical disparities would be relevant. *See Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 987, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) ("The evidence in these 'disparate impact' cases usually focuses on statistical disparities, rather than specific incidents, and on competing explanations for those disparities"). Indeed, Section 1981 is designed to forbid disparate treatment, not disparate impact. *See Franklin v. City of Evanston,* 384 F.3d 838, 848 (7th Cir. 2004); *see also* 42 U.S.C. § 2000e-2(k)(1). Accordingly, Fleming's claim of race discrimination under Section 1981 fails.

### B.    Retaliation Claim

Fleming also brings a retaliation claim under Section 1981 alleging that the CTA retaliated against her for filing complaints about the CTA's discriminatory acts. To overcome the CTA's motion for summary judgment, Fleming may proceed under the direct or indirect methods of proving retaliation. *See Humphries,* 474 F.3d at 404; *see also Stone v. City of Indianapolis Pub. Util. Div.,* 281 F.3d 640, 644 (7th Cir. 2002). Fleming attempts to establish

her retaliation claim under both approaches.

### 1.    Direct Method of Proof

Under the direct method of establishing a retaliation claim, Fleming must present evidence of (1) a statutorily protected activity, (2) a materially adverse action, and (3) a causal connection between the two. *See Humphries,* 474 F.3d at 404. "Evidence of retaliation is 'direct' when, if believed, it would prove the fact in question without reliance on inference or presumption." *Mannie v. Potter,* 394 F.3d 977, 983 (7th Cir. 2005). "This essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus, and because such evidence is rare we also allow the introduction of circumstantial evidence from which the fact-finder could infer intentional discrimination." *Id.* (internal citations and quotations omitted); *see also Sylvester v. SOS Children's Villages Ill., Inc.,* 453 F.3d 900, 902 (7th Cir. 2006).

The Court turns to whether there is a causal connection between Fleming's complaints of discrimination and the CTA's termination of her employment because it is dispositive. *See Humphries,* 474 F.3d at 404. In support of the third element, Fleming argues that she can establish a causal connection between her complaints and her termination based on suspicious timing. The record reveals that Fleming filed an EEOC charge in January 2003 and that she filled out two EEOC Charge Questionnaires (EEOC Form 283) dated September 26, 2003 and October 16, 2003. Thereafter, the CTA terminated her employment on October 28, 2003. There is no evidence in the record, however, concerning the timing of Fleming's "numerous" complaints of race discrimination to her CTA supervisors and managers.

Viewing the facts in favor of Fleming, the timing between her complaints and her

termination, alone, does not support a reasonable inference of retaliation. Although the direct method allows for circumstantial evidence, "timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim." *Kampmier,* 472 F.3d at 939; *see also Burks,* 464 F.3d at 758 (speculation based on suspicious timing alone cannot support reasonable inference of retaliation). Suspicious timing, however, "may permit a plaintiff to survive summary judgment if there is other evidence that supports the inference of a causal link." *Culver v. Gorman & Co.,* 416 F.3d 540, 546 (7th Cir. 2005). Thus, to establish a causal connection, Fleming must also "produce facts which somehow tie the adverse decision to the plaintiffs' protected actions." *Sauzek v. Exxon Coal USA, Inc.,* 202 F.3d 913, 918 (7th Cir. 2000); *see also Burks*, 464 F.3d at 758-59.

Relying on the *Culver* decision, Fleming argues that because she received a garage commendation – which commends a bus operator for executing a bus run in compliance with the rules – six months prior her termination, she has presented evidence supporting a reasonable inference that there is a causal link between her complaints of discrimination and her termination. (Pl.'s Stmt. Facts, ¶ 2, Ex. 2.) In *Culver*, the Seventh Circuit concluded that the plaintiff had set forth sufficient evidence to create a genuine issue of material fact that a causal connection existed because only three days had elapsed between the plaintiff's complaint of discrimination and her termination – as well as the fact that plaintiff's termination "followed closely on the heels of her annual performance evaluation" in which "she had met or exceeded all expectations" and that her supervisor "insisted that he harbored no desire to fire her at the time of her annual review." *Id.* at 546-47. The Seventh Circuit concluded that "the highly probative timing and the rapid reversal of [Defendant's] evaluation of [Plaintiff's] work

performance, creates a triable inference that her complaints of discrimination were a substantial and motivating factor in her termination." *Id.* at 547.

The facts in *Culver* are distinguishable from the present action. Fleming's garage commendation was not an excellent performance review that the CTA quickly reversed, but merely commended Fleming for executing a bus run in compliance with the rules. Further, the *Culver* court relied on the plaintiff's supervisor insisting that he had no desire to fire the plaintiff at her annual review and that the plaintiff was fired three days after complaining of discrimination. Fleming's garage commendation that she received six months before her termination, on the other hand, does not raise a reasonable inference of retaliatory motive, let alone "reasonably suggest" that her claims of discrimination and termination are "somehow related to one another." *See Culver,* 416 F.3d at 547; *Sauzek,* 202 F.3d at 918. Because Fleming has not presented evidence creating a genuine issue of material fact that the CTA had a retaliatory motive, she has not met her burden under the direct method of proof. *See Burks,* 464 F.3d at 758.

## 2. Indirect Method of Proof

Next, Fleming attempts to establish her retaliation claim under the indirect method. To do so, Fleming must establish a prima facie case of retaliation by offering evidence that: (1) she engaged in protected activity; (2) she suffered an adverse action; (3) she met the CTA's legitimate job expectations; and (4) she was treated less favorably than similarly situated employees who did not engage in the protected activity. *Burks,* 464 F.3d at 759; *see also Brewer v. Board of Tr. of Univ. of Ill.,* 479 F.3d 908, 923 (7th Cir. 2007).

Viewing the evidence in a light most favorable to Fleming, she has failed to present

evidence creating a genuine issue of material fact that she was treated less favorably than similarly situated employees who did not complain of racial discrimination. Specifically, Fleming has not set forth evidence that after complaining of discrimination she – and not a similarly situated employee who did not complain of discrimination – was subjected to an adverse action even though she was performing her job to the CTA's satisfaction. *See Kampmier,* 472 F.3d at 940 (citing *Stone*, 281 F.3d at 644). Because Fleming has not identified evidence to support her claim, she has not established her retaliation claim under the indirect method of proof. *See Hemsworth v. Quotesmith.Com, Inc.,* 476 F.3d 487, 490 (7th Cir. 2007) (plaintiff "must identify with reasonable particularity the evidence upon which the party relies"). Therefore, the Court dismisses Count I with prejudice.

### III.  Title VII Retaliation Claim – Count IV

In Count IV of her Fourth Amended Complaint, Fleming alleges that the CTA retaliated against her in violation of Title VII based on her race and gender. In her response brief, Fleming maintains that her Title VII retaliation claim applies only to "those adverse employment actions which occurred after March 8, 2005, the day she returned to work as a full-time CTA bus operator." (Pl.'s Resp. Brief, at 36.) Fleming maintains that the CTA retaliated against her for filing her prior EEOC Charges and this federal lawsuit.

Under Title VII, it is unlawful for an "employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Title VII's "anti-retaliation provision seeks to secure th[e] primary objective [of]

preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White,* ___ U.S. ___, 126 S.Ct. 2405, 2412, 165 L.Ed.2d 345 (2006). Unlike Section 1981 and 1983 claims, the CTA may be liable for its employee's actions under a theory of respondeat superior in Title VII actions. *Alexander,* 474 F.3d at 448. Therefore, the Court turns directly to whether Fleming has set forth sufficient evidence in support of her Title VII retaliation claim.

Fleming attempts to establish her Title VII retaliation claim under the direct method of proof. "Under the direct approach, the employee must show evidence that he engaged in a statutorily protected activity (such as bringing a Title VII claim) and as a result, suffered an adverse action." *Roney v. Illinois Dep't of Transp.* 474 F.3d 455, 459 (7th Cir. 2007). In other words, Fleming must present evidence of (1) a statutorily protected activity, (2) an adverse action, and (3) a causal connection between the two. *Burks,* 464 F.3d at 758 (citing *White,* 126 S.Ct. at 2413).

The Court first turns to the adverse action element of Fleming's retaliation claim. The parties do not dispute that Fleming's January 2006 suspension without pay, namely, her mandatory medical leave, is an adverse action. Fleming, however, also contends that she suffered other adverse actions, including that: (1) the CTA assigned her defective buses; (2) the CTA wrote her up on June 1, 2005 for failing to call control about her bus; (3) the CTA wrote her up for other offenses; and (4) the CTA required for her to meet with a CTA doctor concerning her fitness for duty.[4]

---

[4] Fleming lists other "adverse actions" based on facts that are either not in her Rule 56.1 Statement of Additional Facts or are not supported by her citations to the record. *See Schrott v. Bristol-Myers Squibb Co.,* 403 F.3d 940, 944 (7th Cir. 2005) (parties' statements must contain

The CTA focuses on Fleming's claims that she was forced to drive defective buses and her various write-ups arguing that these actions do not amount to a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). The range of conduct prohibited under Title VII's retaliation provision, however, is broader than Title VII's discrimination provision. *See Phelan,* 463 F.3d at 787; *see also Roney,* 474 F.3d at 461 ("discriminatory acts proscribed by Title VII's anti-retaliation provision are not limited to those that affect the terms and conditions of one's employment"). Recently, the Supreme Court clarified "materially adverse actions" under Title VII's anti-retaliation provision:

> The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.... In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

*White,* 126 S.Ct. at 2414-15 (citations and internal quotations omitted); *see also Roney,* 474 F.3d at 461 ("employer's challenged action must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity."). Neither party addresses Fleming's alleged adverse actions under this standard.

Nevertheless, assuming, *arguendo,* that the alleged actions are materially adverse, Fleming must set forth evidence creating a genuine issue of material fact that there is a causal connection between the protected activity, namely her EEOC complaints and this lawsuit, and

_____

short numbered paragraphs including references to the affidavits, parts of the record, and other supporting materials).

the CTA's various adverse actions. Here, Fleming argues that there was a "short lapse of time between her reinstatement on March 8, 2005 and the immediate occurrences of adverse employment actions." (Pl.'s Resp. Brief, at 39.) As discussed above, suspicious timing alone cannot create a genuine issue of material fact to support a retaliation claim. *See Kampmier*, 472 F.3d at 939.

Fleming also argues that other "connections" between her discrimination complaints and the CTA's treatment of her exist to establish a causal connection, including that: (1) she is meeting the CTA's minimum standards; (2) the CTA assigned her defective buses; and (3) the CTA issued her a write up for failing to call control about her bus.[5] Fleming, however, does not explain how these "connections" establish a causal link between her protected activity and the CTA's conduct. As the Seventh Circuit instructs, "[t]he mere fact that one event preceded another does nothing to prove that the first event caused the second." *Sauzek,* 202 F.3d at 918; *see also Burks*, 464 F.3d at 758-59. Thus, to establish a causal connection "other circumstances must also be present which reasonably suggest that the two events are somehow related to one another." *Sauzek,* 202 F.3d at 918.

Fleming's "connections" fall short of reasonably suggesting that her EEOC complaints and this lawsuit are related to the CTA's actions. *See id.* Fleming's complaints about defective buses, for example, do not raise an inference that link her discrimination complaints to the CTA's actions because there is evidence in the record that bus operators often complain about

---

[5]  Again, Fleming lists other "connections" based on facts that are either not in her Rule 56.1 Statement of Additional Facts or not supported by her citations to the record. *See Schrott v. Bristol-Myers Squibb Co.,* 403 F.3d 940, 944 (7th Cir. 2005) (parties' statements must contain short numbered paragraphs including references to the affidavits, parts of the record, and other supporting materials).

defective buses at the CTA, including the buses' defective emergency communications systems. (Pl.'s Stmt. Facts ¶ 6.)  In sum, Fleming has not presented evidence from which a reasonable fact-finder could infer that she suffered a materially adverse action as the result of her complaints of discrimination.  Because Fleming has not presented evidence creating a genuine issue of material fact that the CTA had a retaliatory motive, she has not met her burden under the direct method of proof.  *See Burks,* 464 F.3d at 758.  The Court thereby dismisses Fleming's Title VII retaliation claim in Count IV from this lawsuit with prejudice.

**IV.     Section 1983 Claim – Count II**

In Count II, Fleming brings a claim under 42 U.S.C. § 1983 against McFadden, who the Court dismissed from this lawsuit without prejudice.  Section 1983 creates a federal cause of action for "the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution or laws of the United States."  *See* 42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must allege that a government official – acting under color of state law – deprived her of a right secured by the Constitution or laws of the United States. *Christensen v. County of Boone, Ill.,* 483 F.3d 454, 459 (7th Cir. 2007).  To recover under Section 1983 a plaintiff must allege that "(1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law."  *Savory v. Lyons,* 469 F.3d 667, 670 (7th Cir. 2006).

In her Fourth Amended Complaint, Fleming alleges that McFadden discriminated against her because of her race and sex.  (Fourth Am. Compl. ¶ 69.)  Fleming further contends "that her race and sex (gender) were motivating factors in the CTA taking adverse employment actions against her and that the CTA also retaliated against her for complaining of such discrimination."

21

(Pl.'s Resp. Brief, at 30.)  Fleming, however, never articulates the constitutional basis for her Section 1983 claim or what constitutional injury she has suffered.  In short, Fleming never alleges or argues that McFadden deprived her of a federal constitutional right – such as her rights under the Equal Protection Clause or First Amendment.

Moreover, even if Fleming could establish a constitutional injury, her Section 1983 claim fails because the CTA is the only remaining Defendant and a municipal entity cannot be found liable if an agent of the municipality is not liable for an underlying constitutional claim.  *See Durkin v. City of Chicago,* 341 F.3d 606, 615 (7th Cir. 2003).  Fleming cannot establish that the CTA is liable under Section 1983 because she has failed to establish that McFadden is liable for any underlying constitutional injury in the first instance.  Therefore, Fleming's claim under Section 1983 is without merit and the Court dismisses Count II with prejudice.

**V.      State Law Retaliatory Discharge Claim – Count III**

Finally, in Count III of her Fourth Amended Complaint, Fleming alleges that her October 2003 termination was in retaliation for refusing to file a fraudulent accident report and her refusal to drive defective buses.  Pursuant to Illinois law, "[a] valid claim for retaliatory discharge requires a showing that (1) an employee has been discharged; (2) in retaliation for the employee's activities; and (3) that the discharge violates a clear mandate of public policy." *Carter v. Tennant Co.,* 383 F.3d 673, 677 (7th Cir. 2004) (citation omitted); *see also Carty v. Suter Co., Inc.,* 371 Ill.App.3d 784, 309 Ill.Dec. 139, 863 N.E.2d 771, 774 (Ill. 2007).

The Court declines to exercise its supplemental jurisdiction over Fleming's state law retaliatory discharge claim because the Court has dismissed Fleming's claims over which the Court had original jurisdiction, namely, her federal claims under Title VII, Section 1983, and

Section 1981.  *See* 28 U.S.C. § 1367(c)(3); *Ross v. Board of Educ. of Twp. High Sch Dist.* #211,

486 F.3d 279, 285 (7th Cir. 2007).  Indeed, "it is the well-established law of this circuit that the

usual practice is to dismiss without prejudice state supplemental claims whenever all federal

claims have been dismissed prior to trial."  *East-Miller v. Lake County Highway Dep't,* 421 F.3d

558, 564-65 (7th Cir. 2005) (quoting *Groce v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir.

1999)).  Last, Section 1367(d) tolls the statute of limitations for 30 days after this Court's

dismissal of Fleming's supplemental claim, allowing her to re-file her retaliatory discharge claim

in state court without it being time-barred.  *See Williams Elec. Games, Inc. v. Garrity,* 479 F.3d

904, 907 (7th Cir. 2007).

## CONCLUSION

For the foregoing reasons, the Court grants the Defendant's Motion for Summary

Judgment and dismisses Counts I, II, and IV from this lawsuit with prejudice.  The Court

declines to exercise its supplemental jurisdiction over Plaintiff's state law retaliatory discharge

claim, and thus dismisses Count III without prejudice.

Dated:   July 2, 2007

**ENTERED**

**AMY J. ST EVE**
**United States District Court Judge**